NOT FOR PUBLICATION (Doc. No. 6)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| MICHAEL GRACE, | |
| Plaintiff, | Civil No. 14-7233 (RBK/KMW) |
| v. | **OPINION** |
| T.G.I. FRIDAYS, INC., et al., | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion for Remand to State Court of Plaintiff Michael Grace ("Plaintiff"). (Doc. No. 6.) Plaintiff brings what he claims is a state law consumer fraud class action, filed on behalf of himself and similarly situated plaintiffs who were harmed by the acts of Defendants, who allegedly violated New Jersey law by failing to list the price of certain beverages sold at T.G.I. Fridays, Inc. ("TGIF") and charging patrons an unreasonable amount for those beverages. In his present Motion Plaintiff claims this case does not meet the jurisdictional amount in controversy threshold of $5,000,000.00 under the Class Action Fairness Act of 2005 ("CAFA"). See 28 U.S.C. §§ 1332(d), 1453, 1711-15. For the reasons set forth below, the Court will deny Plaintiff's Motion for Remand.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a citizen of New Jersey. (Notice of Removal ("NOR") ¶ 8.) TGIF is a New York Corporation with its principal place of business in Carrollton, Texas. (Id.) Sentinel Capital Partners, LLC ("Sentinel") and Tri-Artisan Capital Partners, LLC (improperly pled as TriArtisan

Capital Partners) ("Tri-Artisan") are Delaware limited liability companies with their sole members residing in Delaware and New York. (Id.)[1]

TGIF is a restaurant chain that sells food and drinks to patrons on the premises. (Compl. ¶ 8.) Plaintiff claims that since July 14, 2014, TGIF's New Jersey locations continue to sell beer, mixed drinks, soft drinks, and other beverages without disclosing the actual price of those items at the point of purchase via menu or any other form of notice. (Id. ¶¶ 7, 11-12.) He also contends that it is TGIF's practice to sell those items without posting prices in order to sell more beverages at a higher price point than would otherwise be feasible if the prices were disclosed. (Id. ¶ 13.) The prices for the beverages are only revealed to customer after they have been consumed. (Id. ¶¶ 18, 21.)

The crux of Plaintiff's allegations is that TGIF's practice of knowingly or intentionally failing to disclose the price of soft drinks, beer, mixed drinks, and other beverages is an unconscionable commercial practice, and Defendants have engaged in this practice in order to induce consumers to pay "higher than reasonable prices for those beverages." (See id. ¶¶ 32-34.) He cites as an illustrative example his experience patronizing a TGIF location in Evesham, New Jersey on September 30, 2014, where he ordered an unpriced mixed drink off the menu only to find later that it was priced "[a]t a staggering $10.39, … far greater than he expected it to be and in excess of a reasonable price for the beverage." (Id. ¶ 20.) This was part of TGIF's alleged practice aimed at charging "slightly excessive prices on some drinks without losing sales" and "grossly excessive prices on other drinks." (Id. ¶ 15.)

---

[1] The Court notes that "mere residency in a state is insufficient for purposes of diversity." See Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972) (citing Sun Printing & Publ'g Ass'n v. Edwards, 194 U.S. 377 (1904)). However, because diversity jurisdiction exists for class actions where "any member of a class of plaintiffs is a citizen of a State different from any defendant," jurisdiction may still be proper under 28 U.S.C. § 1332(d)(2) because Plaintiff is a citizen of New Jersey and TGIF is a citizen of New York and Texas.

Plaintiff also alleges that Sentinel and Tri-Artisan own and substantially control TGIF since July 14, 2014, and that Sentinel and Tri-Artisan each know of, approve of, participate in, control, and benefit from the above described practice of selling beverages without clearly marked prices at an unreasonably high price point.  (Id. ¶¶ 7, 13.)

On October 6, 2014, Plaintiff filed this putative class action in the Superior Court of New Jersey, Law Division, Burlington County.  (NOR ¶ 1.)  In his Complaint Plaintiff seeks damages on behalf of himself and the class of "hundreds" of plaintiff class members who were "all customers of New Jersey [TGIF locations][2] … [and] who purchased items from the menu that did not have a disclosed price from July 14, 2014 onward."  (Compl. ¶ 23.)  Despite the size of the class, the number of transactions covered, and the ongoing nature of the time-period covered, Plaintiff claims that "[u]pon information and beleif [sic], the class wide amount in controversy is less than $5,000,000.00 by virtue of the short amount of time."  (Id. ¶ 7.)

Plaintiff's substantive claims include a claim under the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. §§ 56:8-1 et seq., a claim under the New Jersey Truth in Consumer Contract Warranty and Notice Act ("TCCWNA"), N.J. Stat. §§ 56:12-15 et seq., a breach of contract claim, and an unjust enrichment claim.  (Compl., Counts I-IV.)  Plaintiff claims that each class member is entitled to a minimum of a $100 civil penalty and attorney's fees and costs under the TCCWNA, as well as actual damages, treble damages, attorney's fees, a refund for each consumer, and injunctive relief under the CFA.  (See Compl. ¶¶ 38, 45.)  There is also a request for punitive damages in the breach of contract claim.  (Id. ¶ 49.)

---

[2] There are 34 TGIF locations in New Jersey.  (NOR ¶ 10.)

TGIF was served with a copy of the summons and Complaint on October 22, 2014, and Defendants timely removed this action pursuant to 28 U.S.C. §§ 1446 and 1453 on November 20, 2014. (Doc. No. 1.)[3] Defendants claimed removal was appropriate under 28 U.S.C. §§ 1453 and 1332(d)(2) because the parties are at least minimally diverse (NOR ¶ 12), the "aggregate amount in controversy … exceeds $5,000,000," (id. ¶¶ 10-11), and there are more than 100 class members. (Id. ¶ 13.)

On December 12, 2014, Defendants filed a Motion to Dismiss, (Doc. No. 4), and on December 17, 2014, Plaintiff filed the present Motion for Remand, arguing that the $5,000,000 amount in controversy requirement could not be shown by Defendants. (Doc. No. 6.) The Court ordered that Defendants' Motion to Dismiss was dismissed as moot pending the resolution of the Motion for Remand. (Doc. No. 7.)

Because the parties have briefed the rather narrow issue presented in this Motion, the Court is prepared to address the substance of the Motion.

## II.   DISCUSSION

Federal Courts are courts of limited jurisdiction and may only decide cases as authorized by the Constitution. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). A case must be remanded if, at any time before final judgment, the district court discovers that it lacks subject matter jurisdiction to hear the case. See 28 U.S.C. § 1447(c). As the parties removing the case, Defendants have the burden to prove that federal court jurisdiction is proper at all stages of the litigation. See Samuel–Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004);

---

[3] Neither Sentinel nor Tri-Artisan were served with the Summons and Complaint in the State Court action as of the filing of the Notice of Removal. (NOR ¶¶ 5-6.)

Boyer v. Snap–On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985).

Defendants rely on the jurisdiction conferred pursuant to CAFA, which vests original jurisdiction in the federal district courts to hear "class action" lawsuits in which the proposed class has at least 100 members, "the parties are minimally diverse," and "the matter in controversy exceeds the sum or value of $5 million." Standard Fire Ins. Co. v. Knowles, — U.S. —, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). Plaintiff challenges both the basis for removal alleged in Defendants' Notice of Removal and the sufficiency of the evidence supporting Defendants' claim that the amount in controversy exceeds the $5,000,000 threshold, arguing that Defendants' have not shown the amount is greater than $5,000,000 to a legal certainty.[4] Defendants argue that the allegations in their Notice of Removal were sufficient to support their good faith belief that the amount in controversy is in excess of $5,000,000, and that the allegations in the Complaint and the Notice of Removal, as well as the evidence submitted by Defendants in response to Plaintiff's Motion, are sufficient to satisfy the Court by a preponderance of the evidence and to a legal certainty that the amount in controversy is in excess of $5,000,000.[5] Based on the reasons articulated below, the Court finds that the $5,000,000 amount in controversy has been adequately shown, jurisdiction exists under CAFA, and removal was proper in this case.

---

[4] Plaintiff does not dispute that there is minimal diversity of citizenship and there are over 100 putative class members. Therefore, the Court need only address whether CAFA's five million dollar statutory threshold is met.

[5] Because the Court finds that the preponderance of the evidence standard, and not the legal certainty standard, is applicable, it need not consider whether Defendants satisfy the more demanding legal certainty test.

### a. Sufficiency of Allegations in Notice of Removal

The first issue, whether TGIF's Notice of Removal contained sufficient detail to support the allegation that the amount in controversy exceeds $5,000,000, was recently addressed by the Supreme Court in Dart Cherokee Basin Operating Co., LLC v. Owens, — US —, 135 S. Ct. 547 (2014). The question before the Supreme Court in Owens was whether "a defendant seeking removal to federal court is required to include evidence supporting federal jurisdiction in the notice of removal, or is alleging the required 'short and plain statement of the grounds for removal' enough?" Id. at 552-53. The Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Id. at 554. Thus, the grounds for removal should be made in "a short plain statement," just as required of pleadings under Fed. R. Civ. P. 8(a). Id. at 553. No evidentiary support is required, and the Court should accept a defendant's amount in controversy allegation unless it is contested by the plaintiff or questioned by the Court. Id.; see also id. at 554 ("Defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.") (quoting H.R. Rep. No. 112-10, at 16 (2011)).

It is clear from a review of Defendants' Notice of Removal that it contains a short and plain statement alleging a plausible basis that the $5,000,000 amount in controversy requirement has been met. The Notice of removal states that there 34 TGIF locations in New Jersey, the proposed class consists of "all customers of [TGIF] who purchased items from the menu that did not have a disclosed price from July 14, 2014 onward," all customers who purchased a beverage without a posted price may be entitled to a minimum $100 civil penalty under TCCWNA for each purchase made, all customers may be entitled to actual damages, treble damages, attorney's

fees, and a refund under the CFA, and all customers may be entitled to punitive damages under the breach of contract claim. (NOR ¶¶ 10-11.) Defendants noted that it would take only 50,000 customer transactions subject to the $100 TCCWNA fine to reach the $5,000,000 threshold, and due to the ongoing nature of the lawsuit that was certain to happen. (Id. ¶ 10.) These allegations meet Defendants' burden set forth in Owen, and Plaintiff's suggestion that Defendants' Notice of Removal does not contain enough factually accurate material to meet the plausibility requirement is off the mark. Plaintiff seemingly misconstrues the standard required for allegations in a notice of removal with the standard that might apply once a Plaintiff contests the amount in controversy.

### b. Challenged Amount in Controversy

Even though TGIF's allegations are sufficient, Plaintiff may still contest the grounds for removal. Here, Plaintiff has done so by attacking the amount in controversy allegation put forth by TGIF. The parties dispute which test the Court should apply to the amount in controversy when a named plaintiff expressly limits the amount in controversy in a proposed class action to less than $5,000,000 in the original state court complaint and challenges the defendant's amount in controversy allegations in a subsequent motion for remand.[6] Therefore, the Court will address

---

[6] While the Court assumes for purposes of this Opinion that Plaintiff explicitly limited the amount in controversy to $5,000,000 or less, that assumption rests on shaky ground. As noted above, Plaintiff's Complaint only averred that "[u]pon information and belief, the class wide amount in controversy is less than $5,000,000 by virtue of the short amount of time." (Compl. ¶ 7 (emphasis added).) This statement could very well be read as equivocating, in light of the "upon information and belief" language, and simply incorrect in light of the amount in controversy being tied to the time period covered in the Complaint, which is ongoing in nature. See Frederico v. Home Depot, 507 F.3d 188, 196 (3d Cir. 2007) (holding that allegations in a complaint of the amount in controversy must be specific and precise, and cannot be made "impliedly" or "inferentially," if the plaintiff intends to expressly limit the limit the amount in controversy to below the jurisdictional threshold). However, because the Court finds that the preponderance of the evidence standard applies even assuming Plaintiff explicitly limited the amount in controversy in his original Complaint, the end result of the Court's analysis would be the same were the Court to conclude that the amount in controversy was not so limited. See Judon v. Travelers Property Cas. Co. of Am., 773 F.3d 495, 504 (3d Cir. 2014) ("[W]here a challenge to the amount in controversy had been raised in the pleadings or the notice of removal, but 'no evidence or findings in the trial court addressed that issue,' 'the party alleging jurisdiction [is

this issue first. Because the Court decides that the preponderance of the evidence standard applies, it will apply that standard to the allegations in the Complaint and the proofs submitted by TGIF.

### i. Which Standard Applies

Three days before the Supreme Court's decision in Owens was released, the Third Circuit presented a cogent and comprehensive analysis of three tests applied by courts in this Circuit when plaintiffs in proposed class actions challenge the amount in controversy after a Defendant removes the case to federal court. See Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495 (3d Cir. 2014). Regarding the first tests, the court in Judon noted that in situations where no pre-certification stipulation had been made regarding the amount in controversy, and where a party challenged the amount in controversy but "no evidence or findings in the trial court addressed that issue," the party alleging jurisdiction has the requirement to justify his allegations by a preponderance of the evidence. Id. at 504 (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178, 179-80, 189 (1936); Samuel-Bassett, 357 F.3d at 397). Conversely, where jurisdictional facts are not contested, or the trial court already made findings on the issue, and the amount in controversy is determined in whole or in part by applicable law, the party challenging the court's jurisdiction must show that the plaintiff cannot recover more than amount in controversy threshold to a legal certainty. Judon, 773 F.3d at 505 (citing Samuel-Bassett, 357 F.3d at 397-98). The court in Judon also discussed the so-called "third test" under CAFA, as set forth in Morgan v. Gay, 471 F.3d 469 (3d Cir. 2006). See Judon, 773, F.3d at 504 n.8.

---

required to] justify his allegations by a preponderance of the evidence.'") (quoting Samuel-Bassett, 357 F.3d at 397; McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178, 189 (1936)).

In Morgan the Third Circuit held that where a plaintiff expressly limited the amount in controversy in a class action lawsuit filed in state court, the removing defendant was required to prove, "to a legal certainty," that the amount in controversy exceeded the statutory minimum. Id. at 474. In reaching this conclusion, the court noted that the federal courts have long held that "plaintiffs may limit their claims to avoid federal subject matter jurisdiction," such as by suing for less than the jurisdictional amount. Id. (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 294 (1938)). Because "CAFA [did] not change the proposition that the plaintiff is the master of her own claim," the court found that a plaintiff may limit the monetary claims in a class action to avoid the amount in controversy threshold just as she could do so in any other civil suit. Morgan, 471 F.3d at 474 (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)). Thus, a defendant may only remove a case to federal court under the circumstances by showing that the amount in controversy exceeds $5,000,000 to a legal certainty, as a means of challenging the "broad good faith requirement" for the amount in controversy pled in the Plaintiff's complaint. Morgan, 471 F.3d at 474 (citing Red Cab, 303 U.S. at 288; Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 398 (3d Cir. 2004)).[7]

The rule announced in Morgan was discussed approvingly a year later in Frederico, where the Third Circuit distinguished it from the types of cases governed by Red Cab and

---

[7] The court in Morgan also noted that "because 'the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy,' '[a] defendant's notice of removal serves the same functions as the complaint would in a suit filed in federal court.'" Morgan, 471 F.3d at 474 (quoting Brill, 427 F.3d at 449). Under such circumstances, the notice of removal need only contain (plausible) good faith allegations as to the actual amount in controversy. See Owens, 135 S. Ct. at 553-54. However, in light of the Supreme Court's language in Owens, this Court cannot conclude that the role and requirements of a party's notice of removal differ in any respect whether the plaintiff expressly limited the amount in controversy in a class action or was silent on the issue. See id. at 554 ("[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); id. ("[A] dispute about a defendant's jurisdictional allegations cannot arise until after the defendant files a notice of removal containing those allegations.") (emphasis in original).

9

Samuel-Bassett, which involved those situations where a plaintiff had not specifically averred in the complaint that the amount in controversy was less than the jurisdictional minimum. Frederico, 507 F.3d at 195-97. Then in Judon the Third Circuit commented that, while the Supreme Court's decision Knowles had held that a plaintiff's stipulation of an amount in controversy less than $5,000,000 could not bind the class, and thus could not prevent removal under CAFA, Knowles may have still been consistent with Morgan, which also acknowledged that a plaintiff could not prevent removal altogether by expressly limiting the amount in controversy to below the threshold. Id. However, the court in Judon also acknowledged that it was not presented with the opportunity to reexamine the holding in Morgan in light of Knowles, and therefore would not opine on the continuing validity of the legal certainty test. Id.

This Court finds that the Supreme Court's recent decision in Owens, taken together with the previous decision in Knowles, calls into question the soundness of the reasoning given by the court in Morgan for applying the legal certainty test rather than the preponderance of the evidence test.

As described above, Morgan held that a named plaintiff may limit the amount in controversy to less than $5,000,000 under the plaintiff-as-master-of-his-complaint reasoning. 471 F.3d at 474 (citing Red Cab, 303 U.S. at 294). Because such a limitation entails a good faith requirement, the legal certainty test was still available to a defendant wishing to remove the case to federal court. Id. (citing Samuel-Bassett, 357 F.3d at 398). In other words, a court would presume the jurisdictional facts had been established by the plaintiff's stipulation of the amount in controversy, and the defendant's only means of challenging this amount was by showing to a legal certainty the amount in controversy was actually greater than $5,000,000. However, in Knowles the Supreme Court rejected the idea that a named plaintiff's stipulation of an amount in

10

controversy (prior to class certification) could bind the class, 133 S. Ct. at 1349, differentiating class actions from cases with individual plaintiffs, whose stipulations to damages are binding on all plaintiffs.  Id. at 1350 (citing Red Cab, 303 U.S. at 294).  The Court noted that to hold otherwise would "treat a nonbinding stipulation as if it were binding, exalt form over substance, and run directly counter to CAFA's primary objective: ensuring 'Federal court consideration of interstate cases of national importance.'"  Knowles, 133 S. Ct. at 1350 (quoting Class Action Fairness Act of 2005, Pub. L. No. 109–2, 119 Stat. 4, § 2(b)(2) (2005)); see also Owens 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.") (citing Knowles, 133 S. Ct. at 1350).  The holding in Knowles appears to significantly undermine the reasoning offered by the Court in Morgan for applying the legal certainty test when a plaintiff limits the amount in controversy to less than the jurisdictional threshold in the original state court class action complaint.  The legal certainty test would not be consistent with the non-binding nature of any pre-certification stipulation.

Later, the Supreme Court in Owens noted that when a defendant seeks to remove a class action to federal court, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  135 S. Ct. at 553.  "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  Id. at 554.  The Supreme Court went on to state unequivocally, "a dispute about a defendant's jurisdictional allegations cannot arise until after the defendant files a notice of removal containing those allegations."  Id. (emphasis in original). This leads to the conclusion that a pre-removal stipulation by a named plaintiff of the amount in controversy does not automatically "contest" the defendant's amount in controversy allegation.

11

Though the Owens Court was not asked to decide what a defendant's burden was once the amount in controversy was challenged by the plaintiff, it assumed that the preponderance of the evidence standard set forth in 28 U.S.C. § 1446(c)(2)(B), applying to cases removed under § 1332(a), also applied to cases removed under § 1332(d)(2). Id. at 554 n.1 (citing Frederick v. Hartford Underwriters Ins. Co., 683 F.3d 1242, 1247 (10th Cir. 2012) ("[T]here is no logical reason why we should demand more from a CAFA defendant than other parties invoking federal jurisdiction.") (internal quotation marks omitted)). The Court seemingly agreed that the reasoning expressed in the House Judiciary Committee Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("JVCA") for using the preponderance of the evidence standard applied equally to class actions as it did to individual civil actions. See Owens 135 S. Ct. at 554 (quoting House Judiciary Committee Report on the JVCA, H.R. Rep. No. 112-10, p. 16 (2011)) ("[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.") If the preponderance of the evidence test applies when the plaintiff disputes the amount in controversy, and disputes may only arise after the notice of removal is filed, this suggests that the legal certainty test is unnecessary under the present circumstances.

The Supreme Court's decision in Knowles, which called into question the reasoning set forth by the Third Circuit in Morgan for application of the legal certainty standard where a plaintiff stipulates to the amount in controversy, coupled with the language in Owens clarifying that a jurisdictional challenge to the defendant's allegations of the amount in controversy in the

12

notice of removal cannot be made until <u>after</u> the notice of removal is filed, and the dicta in <u>Owens</u> indicating that the preponderance of the evidence standard should apply in all situations where the amount in controversy is challenged after a notice of removal is filed, suggests that this Court must apply the preponderance of the evidence standard in this case. Accordingly, the Court will proceed to analyze the allegations in the Complaint and TGIF's submitted proofs in deciding whether the amount in controversy exceeds $5,000,000 by a preponderance of the evidence.

### ii. Applying the Preponderance of the Evidence Standard in this Case

To "determine whether the matter in controversy" exceeds the $5,000,000 jurisdictional threshold a district court must aggregate "the claims of individual class members." § 1332(d)(6). In other words, CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." <u>Knowles</u>, 133 S. Ct. at 1348. This entails examining both "the dollar figure offered by the plaintiff" and Plaintiff's "actual legal claims" to determine whether "the amount in controversy exceeds the statutory threshold," <u>see</u> <u>Morgan</u>, 471 F.3d at 474–75, as well as considering the proofs offered by both sides and deciding, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." <u>Owens</u>, 135 S. Ct. at 554.

The Court agrees with Plaintiff that TGIF could have made the job of determining the amount in controversy easier by attaching more detailed information regarding sales of different beverages, beverage sales per customer, beverage prices, and other relevant figures. However, based on the period of time covered to date in Plaintiff's Complaint, the amount of one type of

beverage sold in a three-month period as certified by TGIF, and the damages available for each of Plaintiff's claims, the Court finds that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence.

First, Plaintiff's Complaint has no expiration date, and seeks damages for all items sold to customers without clearly disclosed prices at TGIF locations in New Jersey since July 14, 2014. Thus the damages would, at the very least, include transactions for beverages, including mixed drinks, beer, soft drinks, and more, sold over the course of the last year. The parties also have not indicated that TGIF has ceased the alleged offending practice of selling items without clearly marked prices, so the Court cannot assume that the relevant period will end on the date of this Opinion. Accordingly, the Court finds that the claims in the Complaint cover damages over the course of at least one year.

Secondly, even a conservative estimate of the items sold at the TGIF locations yields a significant number of transactions. If the mixed drink transactions at the New Jersey TGIF locations between July 15, 2014, and October 6, 2014, totaled 93,773, (see Ex. B to Schultz Cert., Decl. of Suzanne Carpenter ("Carpenter Decl.") ¶¶ 2-3), the transactions from July 15, 2014, to July 15, 2015, would likely total about 350,000. If the Court were to assume only one-third of the 350,000 transactions were made in a situation where the mixed drink prices were not clearly indicated, there would still be approximately 115,000 "offending transactions" over the course of the last year for mixed drinks alone. The Court need not speculate about how many other beverage or food transactions occurred that are subject to this lawsuit, because this conservative 115,000 figure brings the damages above the jurisdictional threshold.

The CFA permits customers to recover a full refund for all offending transactions, N.J. Stat. § 56:8-2.11, as well as treble damages for any actual damages, and attorney's fees. N.J.

Stat. § 56:8-19.  Plaintiff does not include the average cost of offending mixed drink transactions in the Complaint, and TGIF has not included such a number in the Declaration of Ms. Carpenter.  However, even if the Court assumes the illustrative $10.39 transaction price cited by Plaintiff in his Complaint was above average, and chooses instead a $7.00 average mixed drink price for offending transactions, the refund provision alone brings the damages to over $800,000.  It is challenging to calculate the actual damages without knowing what Plaintiff believes a reasonable drink price should be, but assuming anything at or above a 40% up-charge is unreasonable, and thus a $7.00 drink should have been priced as a $5.00 drink, class members would suffer an average of $2.00 in actual damages per offending transaction.  Because this results in actual damages of about $230,000, the trebled actual damages would equal about $690,000 for the CFA claim alone.  Including refunds, this brings the compensatory damages for the CFA claim to approximately $1,490,000 for just the offending mixed drink transactions.

Pursuant to the TCCWNA, Plaintiff seeks actual damages, a refund for all transactions, attorney's fees, and a civil penalty of not less than $100 for each Plaintiff.  See N.J. Stat. § 56:12-17.  As discussed above, the refund and actual damages total approximately $1,030,000 when combined.  The total number of class members is unknown at this time, but Plaintiff estimates it in the "hundreds."  Even if there were only 100 class members, the civil penalty could be at least $10,000.  See United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280 (App. Div. 2009) (calculating the civil penalty for violations of the TCCWNA at $100 per class member in a purported class action).  Accordingly, TGIF may be liable for at least $1,040,000 under the TCCWNA.

Under Plaintiff's breach of contract theory, he seeks actual damages, punitive damages, and attorney's fees.  Relying on the earlier calculation of actual damages, where each customer

15

paid on average $2.00 more than was reasonable on each of the 115,000 offending transactions, the actual damages for the breach of contract claim would be $230,000. Because punitive damages are estimated at five times the compensatory damages, see Frederico, 507 F.3d at 199 (calculating punitive damages at five times the compensatory damages) (citing N.J. Stat. § 2A:15-5.14(b)), punitive damages for the breach of contract claim alone would equal $1,150,000. This leads to a liability of as much as $1,380,000 for breach of contract.

Finally, because Plaintiff seeks attorney's fees in each of the claims, the Court must determine the possible judgment total and estimate as much as thirty percent of that amount in fees. Frederico, 507 F.3d at 199 ("Fees could be as much as thirty percent of the judgment.") (citing In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 303 (3d Cir. 2005)). If the CFA claim could reach $1,490,000, the TCCWNA claim could reach $1,040,000, and the contract claim could reach $1,380,000, the judgment total may reach $3,910,000. That means attorney's fees could amount to $1,173,000, and the overall damages amount could be as much as $5,083,000.

Bearing in mind this amount does not include any beverage transactions other than mixed drinks, assumes only one third of the beverage transactions qualify as "offending transactions," does not account for the cost of the injunctive relief sought by Plaintiff,[8] and is limited to only one year despite the fact that the period covered by the Complaint is still open and ongoing, the Court finds by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

---

[8] The Court may generally quantify the value of injunctive relief when determining the amount in controversy. See In re Corestates Trust Fee Litig., 39 F.3d 61, 65 (3d Cir. 1994).

Because the proposed class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds the jurisdictional threshold, jurisdiction exists pursuant to § 1332(d)(2). Accordingly, Plaintiff's Motion for Remand must be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand will be **DENIED**. An accompanying Order shall issue.

Dated: 7/27/2015

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge